10667.

DAY v. ATLANTA & CHARLOTTE A. L. RY. CO.

(108 S. E. 140.)

RAILROADS—ACTION HELD ONE FOR INVASION OF ABUTTING OWNER'S INCLOSURE, AND NOT TO TRY TITLE UNDER RIGHT OF WAY DEED.—An action by plaintiff whose fence was broken and whose close was entered by the servants of a railroad company, who claimed that by virtue of a right of way deed it had title to a portion of the land which abutted on a street, *held* one for invasion, and not for determination of title; hence the direction of a verdict for defend-and on the theory that it established title to a portion of the property was error.

23—s. c. 116

Before Peurifoy, J., Pickens, September, 1919. Reversed and remanded.

Action by Elias Day against Atlanta & Charlotte Air Line Railway Co. From directed verdict for defendant the plaintiff appeals.

*Messrs. McSwain & Craig,* for appellant, cite: *Plaintiff alleging title and possession is entitled to damage upon proof of possession:* 85 S. C. 358; 110 S. C. 474.

*Messrs. Carey & Carey,* for respondent, cite: *Title was in issue:* 104 S. C. 456; 114 S. C. 375. *No adverse claim against railway for right of way unless enclosed:* 109 S. C. 444. *Conveyance to railway "for railroad purposes forever in fee simple" conveys a title in fee:* 106 S. C. 304; 91 S. C. 59; 15 S. C. 10. *Grantor and his heirs alone can take advantage of breach of condition:* 65 S. C. 251; 43 S. C. 221. *Verdict for plaintiff for any amount would have established title in him:* 70 S. C. 373; 71 S. C. 322.

June 30, 1921.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

The allegations of the complaint herein are as follows:

"(1) That defendant is a corporation duly chartered by and under the laws of the State of South Carolina, and has a line of railway in said county and State, operated by its agents, employees, and lessees, and said line of railway runs through the town of Easley, and in part through the property now belonging to plaintiff.

"(2) That plaintiff owns two dwelling houses facing and fronting on East Main street in the city of Easley, said county and State, and resides in one of said dwelling houses, and has maintained for a number of years yard fences inclosing the front yards.

"(3)   Heretofore, on or about March 8, 1917, the defendant, its agents, servants, and lessees, entered upon the premises of plaintiff in defiance of written notice warning against trespass, and, over protest and disregard of the rights and feeling of plaintiff, did willfully and maliciously trespass on the land of plaintiff, tore down his yard fence, tore up shrubberry and flowers and the ground within said bound of fences, and left same in rough and dilapidated condition.

"(4)   The plaintiff rebuilt said fences, and thereafter, on or about March 29, 1917, the defendant by its agents, servants, and lessees did again willfully and maliciously and in defiance, and over the protest of the plaintiff. and in disregard of warning, enter upon said land of plaintiff and tore down said fences for the second time.

"(5)   That by reason of the unlawful, willful, and malicious disregard of the rights of plaintiff the defendant has caused actual and punitive damage to plaintiff in the sum of $6,000.

"Wherefore plaintiff prays judgment against defendant for the  sum of $6,000 and cost of this action."

The defendant, answering the complaint herein, alleges:

"(1)   That it denies each and every allegation thereof except as herein admitted.

"(2)   That it has constructed a double track of its line of railway through the city of Easley, but has done no acts connected therewith except upon its own right of way, and has not trespassed or entered upon any land belonging to the plaintiff."

Mrs. Leila Day, for the plaintiff, sworn, says:

"I am the wife of the plaintiff, and was at home on March 8, 1917, when the agents and servants of the defendant came and started tearing down the yard fence, and Mr. Day stopped them by having the foreman arrested. Mr. Day went off somewhere, and later on the same day the

hands of defendant, about 30, came back, and I heard a great fuss and noise, and saw that they were tearing down the fence, breaking down the post, pulling down the braces, cutting up the shrubberry and flowers and shade trees, and throwing the rubbish back to the door steps. When they finished they left, though I asked them not to do anything in Mr. Day's absence, but Mr. Steele, the foreman, was obdurate and didn't treat me politely. I asked him not to disturb my flowers if the property was theirs, but to take it in a legal manner. After Mr. Day had put back the fence, the hands of the defendant came again on March 29th, and tore down the fence again while Mr. Day was sick in bed and unable to get up. I went, at Mr. Day's request, and served a written notice on the foreman, telling them to keep off the premises, but they tore down that part of the fence of the tenant lot. They put the rubbish all over my yard, and walked all over it, and put cigar stubs on my doorsteps."

A. D. Perkins, sworn for defendant, says:

"I am civil engineer, and made this plat of the property in question. It is 100 feet from the center of the right of way of the main line of the railroad, down to the two houses of Mr. Elias Day. It is 42 feet from these two houses up to the present sidewalk. The railroad intended to widen this street in the direction of the Day houses, 8 feet. That would leave a frontage in each yard of 34 feet. When the second track was put down, it was laid on the south side of the old track. The width of this second track is 8 feet. There is 30 feet of roadway there now. The public uses it up to the railroad on both sides of the track."

Mr. F. Furlo, for defendant, sworn, says:

"I am a civil engineer for defendant, and know that this plat is correct, and when they laid the double track through Easley on the south side of the old main line track we had to take up a part of the street in front of Mr. Day's house,

and when we were tearing down Mr. Day's fence we were taking 8 feet more on the other side of the street, so that the street would not be any narrower than it was originally.

"The plat I refer to is the one made by Mr. Perkins, Exhibit F. In putting down the second track, we used 8 feet of what the town was using as a street, and it insisted that we give for a similar use 8 feet of our right of way on the other side. This was the purpose of opening up the 8. It was part of the construction work of laying the double track."

J. M. King, for defendant, sworn, says:

"I was mayor of the town when these things took place, and the town council required the railroad to leave South Main street in front of Mr. Day's house its original width, after laying down the second track, and occupying a part of the original street. We required the railroad to open up the 8 feet in front of Mr. Day's property before we were willing for it to lay the double track. This was in lieu of that which had been taken by laying down the second double track. This street has been used ever since I can remember as a railroad right of way and a street on it. The city council passed an ordinance requiring anybody that did any work on the streets to first get a permit to do it. The railroad company got this permit when it laid its second track."

The defendant moved the Court to direct a verdict in its favor upon the following grounds:

"(1) That under the deed from Jas. S. Smith to the Atlanta & Richmond Air Line Railway, the defendant owns for a right of way 100 feet on each side of the track, measuring from the center thereof.

"(2) That the recitals in said deed as to the matters to be done and not to be done are void, because repugnant to the estate previously granted, and also because the said deed

is signed by Jas. S. Smith only, and the mere acceptance of said deed did not bind the grantee thereof or the defendant as to said recitals.

"(3)   That the plaintiff cannot maintain this action, as he purchased his land subject to defendant's right of way created by the Smith deed.

"(4)   That the recitals and statements in the Jas. S. Smith deed, if of any force, merely creates a personal covenant, of which only the said Smith, or his administrator or heirs at law, could take advantage, and this is true whether said words be a personal covenant or a conditional one.   That the said words do not create a covenant running with the land, and if they did there is a want of privity as to the plaintiff, the covenant ceasing or running out upon the death of Joel Ellison, who took a life estate only under the deed to him by Elsie E. Smith and O. H. C. Smith.

"(5)   That the plaintiff by his own evidence has shown that he had no title."

His Honor the presiding Judge sustained the motion, and the plaintiff appealed upon the following exceptions:

"(1)   That his Honor erred in not holding that the action at bar is one of trespass quare clausum fregit, and that the testimony clearly showed that the defendant had trespassed within the close of plaintiff by tearing down his fence three times and by digging up his trees and rosebushes.

"(2)   That the presiding Judge erred in not holding that the defendant railroad company was liable for such trespass upon the private premises of plaintiff, inclosed by a fence, over the protest, both oral and written, of plaintiff, and that, assuming that the defendant had title for railroad purposes under its right of way deed to said land, yet it was the duty of the railroad company to recover said land by process of law, and not to take the same by force of arms.

"(3)   That the presiding Judge erred in not holding that the evidence plainly showed that the defendant was not taking possession of said land for railroad purposes, but merely for a street to carry out its bargain with the town council of Easley, and further erred in not holding that the railroad company had an easement in said land for railroad purposes only, and that the plaintiff might use said land for any purpose not inconsistent with the right of the railroad company, and that a public street is not a railroad purpose.

"(4)   That the presiding Judge erred in holding that the right of way deed in question is to be construed in the same way as was the deed construed in the case of *Hammond v. Railway Co.,* 15 S. C. 10, whereas the presiding Judge should have held that the deed in question in the case at bar was not one based upon forfeiture, or the breach of a condition subsequent, but is a plain right of way deed, conferring an easement for railroad purposes only, and that such railroad company could not dispute the title of the plaintiff, or any other person found in possession of the land under color of title, with a house upon the land and with the fence around the house, and that the railroad company could only use said land, under any circumstances, for railroad purposes.

"(5)   That the presiding Judge erred in not holding that the absolute legal title in this case does vest in the plaintiff, who with his immediate grantors has been in possession of said land for more than 20 years under color of title, and residing on same; and, furthermore, that the presiding Judge erred in not holding that the question of title is not in issue in this case, and that, even assuming that plaintiff does not have a perfect paper title to the land, yet the railroad company would have no right to take possession of said land, and to tear down plaintiff's yard fence and to dig up his trees and rosebushes, except and only for use by the railroad for railroad purposes, and that such railroad

could. take possession of said land for railroad purposes over the protest of one found in possession with a fence around it and living upon it, over the protest, both oral and written, only by resorting to the Courts either for ejectment or for the recovery of so much of the land as might be needed by the railroad for railroad purposes."

Our construction of the complaint is that it sets forth cause of action for damages, on account of the alleged high-handed and lawless manner in which plaintiff's possession was invaded by the defendant, and not to try the title to the land.    Therefore there was error on the part of his Honor the presiding Judge in sustaining the motion for a directed verdict.

Having reached this conclusion, it becomes unnecessary to consider the other questions presented by the exceptions. Reversed and remanded for a new trial.

MR. JUSTICE COTHRAN disqualified, did not sit.